IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| **CHRISTIAN ALBERTO ARTEAGA MEJIA,**<br><br>**Plaintiff-Petitioner,**<br><br>vs.<br><br>Kristi NOEM, Secretary, Department of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; Pam BONDI, Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; Sirce OWEN, Acting Director for Executive Office for Immigration Review; OMAHA IMMIGRATION COURT; Todd M. LYONS, Acting Director of Immigration and Customs Enforcement (ICE); IMMIGRATION AND CUSTOMS ENFORCEMENT; Peter BERG, St. Paul ICE Field Office Director; Dave BEUTER, Linn County Jail Administrator; and Brian GARDNER, Linn County Sheriff,<br><br>**Defendants-Respondents.** | CASE NO. 1:25-cv-00164<br><br>**MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER** |

**COMES NOW**, Plaintiff Christian Alberto Arteaga Mejia, by and through his undersigned counsel, and hereby files this motion for a temporary restraining order to enjoin State and Federal Respondents from detaining him unlawfully. Plaintiff incorporates by reference all statements contained in the Petition for Writ of Habeas Corpus. Plaintiff further states as follows:

I.   INTRODUCTION

1.   Plaintiff-Petitioner Christian Alberto Arteaga Mejia is a noncitizen and longtime resident of the United States who is harmed by Defendants-Respondents' (Defendants') automatic stay procedure, in conjunction with their draconian policy reinterpreting the immigration detention statutes to preclude Plaintiff from eligibility for bond under the Immigration and Nationality Act

1

(INA), 8 U.S.C. § 1226(a), and for bond hearings under 8 C.F.R. §§ 1003.19(a), 1236.1(d).

2. Despite being granted a bond by the Immigration Judge, Defendants intend to hold Plaintiff under the automatic stay provisions of appeal of the Immigration Judge's order, until the BIA can wrongfully declare that he is subject to mandatory detention.

3. Plaintiff incorporates the entirety of his initial complaint and petition into this motion.

4. A temporary restraining order is governed by a four-factor test. Courts must consider whether a Plaintiff has shown: (1) a likelihood of success on the merits, (2) that he is likely to suffer irreparable harm in the absence of such relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008).

5. Plaintiff is likely to succeed on the merits of his petition for a writ of habeas corpus due to the ultra vires nature of the automatic stay provision, the automatic stay provision's violation of procedural due process, and the automatic stay provision's violation of substantive due process. The balance of equities is in protecting the Constitution of the United States, and an injunction is in the public interest to discourage future unlawful government detention.

## II. LIKELIHOOD OF SUCCESS ON THE MERITS

6. Plaintiff incorporates all of his arguments for why he should prevail in his Complaint into why he would eventually succeed on the merits, but Plaintiff focuses on four regarding the automatic stay provision in this motion: the ultra vires nature of the regulation, the threat to procedural due process, the violation of substantive due process, and the strong weight of every other court to consider the issue.

### Ultra Vires

7. "Agency actions beyond delegated authority are 'ultra vires,' and courts must invalidate them." U.S. ex rel. O'Keefe v. McDonnell Douglas Corp., 132 F.3d 1252, 1257 (8th Cir. 1998).

8. "Congress has permitted the Attorney General to delegate detention determinations

to 'any other officer, employee, or agency of the Department of Justice.' 28 U.S.C. § 510." IJs are administrative law judges within the DOJ and are thus properly delegated bond-determination authority. See 8 U.S.C. § 1101(b)(4). By contrast, DHS, the party that invoked the automatic stay provision, is not within the Department of Justice, but is a separate executive department. See 6 U.S.C. § 111." Palma v. Trump, 2025 WL 2624385, at *5 (D. Neb. 2025).

9. "By permitting DHS to unliterally extend the detention of an individual, in contravention of the findings of an agent (the IJ) properly delegated the authority to make such a determination, 8 C.F.R § 1003.19(i)(2) exceeds the statutory authority Congress gave to the Attorney General." Id.

10. "Because this back-ended approach effectively transforms a discretionary decision by the immigration judge to a mandatory detention imposed by [DHS], it flouts the express intent of Congress and is ultra vires to the statute." Zavala v. Ridge, 310 F. Supp. 2d 1071, 1079 (N.D. Cal. 2004).

**Procedural Due Process**

11. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

12. Liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987).

13. To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).

14. Courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards";

3

and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

15. The first factor weighs in favor of Plaintiff. Being free from physical detention "is the most elemental of liberty interests." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). "[A]n individual's private interest in freedom from prolonged detention is unquestionably substantial." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022) (cleaned up).

16. The second factor also weighs in favor of Plaintiff. There is an enormous risk of erroneous deprivation of liberty under the automatic stay rule with little value to procedural safeguards.

17. The regulation "provides no identifiable standard that would guide any purported due process procedures" and this "undefined and subjective standard clearly creates a likelihood of arbitrary and capricious application." Herrera v. Knight, 2025 WL 2581792, at *10 (D. Nev. 2025)

18. "[T]he likelihood of the erroneous deprivation is also high because the automatic stay is generally invoked only after an IJ has already granted release to an individual based on a finding that the alien has established by clear and convincing evidence that they are not a flight risk or a danger to the community" Id.

19. "As such, the stay is effectively a unilateral automatic stay pending appeal as of right afforded to the losing party—the agency official who has just failed to present evidence or argument sufficient to convince a neutral decisionmaker that detention is warranted." Id.

20. The stay is also in contrast to ordinary requirements of a stay on appeal, which usually require a showing of likely success on the merits and irreparable injury in the absence of a stay. Id.

21. Because the automatic stay provision makes DHS both prosecutor and adjudicator of the likelihood of its success on appeal, and DHS has already lost the argument, it makes erroneous deprivation of liberty not just a risk, but likely. Id. (citing Zavala v. Ridge, 310 F.Supp.2d 1071, 1078

4

(N.D. Cal. 2004); Ashley v. Ridge, 288 F. Supp. 2d 662, 670–71 (D.N.J. 2003); Reynosa Jacinto v. Trump, 4:25-cv-03161-JFB-RCC, —— F.Supp.3d ——, ——, 2025 WL 2402271 at *7 (D. Neb. August 19, 2025)).

22. "With regards to the probable value of additional procedure, it is not difficult to conclude that *any* additional procedure is valuable where, as here, the only procedure required for continued detention appears to be an agency official checking a box and filing a form." Herrera v. Knight, 2025 WL 2581792, at *11 (D. Nev. 2025) (emphasis in original).

23. Allowing DHS to ask the BIA to stay the custody determination based on the circumstance of the case, as already in the regulations, would be sufficient to cure the due process infirmities. Id.

24. Under the third factor, the government's potential interest, such as in ensuring the alien is not dangerous or a flight risk, "has already been secured by the IJ's finding that Petitioner is neither a danger nor a flight risk." Palma v. Trump, 2025 WL 2624385, at *4 (D. Neb. 2025).

25. "[T]here can be no possible application of this regulation that would satisfy due process where it purports to authorize the most severe and recognized deprivation of liberty without a hint of a process to challenge such deprivation." Herrera v. Knight, 2025 WL 2581792, at *12 (D. Nev. 2025)

**Substantive Due Process**

26. "Government detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural safeguards, or in certain special and non-punitive circumstances 'where a special justification, ... outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Zavala v. Ridge, 310 F. Supp. 2d 1071, 1076 (N.D. Cal. 2004) (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

27. The automatic stay, "which has permitted unilateral government detention of

5

Petitioners without a case-by-case determination, after a reasoned finding based on clear and convincing evidence that they do not pose a threat to safety or a risk of flight, violates substantive due process because the Government has asserted no special justification that outweighs Petitioners' constitutionally protected liberty interest." Herrera v. Knight, 2025 WL 2581792, at *12 (D. Nev. 2025).

28. "To the extent the government may contend that continued detention is necessary to secure Petitioner's presence for her immigration proceedings, such a concern is not well-placed. As explained above, the IJ determined Petitioner was not a danger or flight risk, and imposed a bond and other conditions, including her continued appearance at court dates, as conditions of her bond." Palma v. Trump, 2025 WL 2624385, at *4 (D. Neb. 2025)

### Other District Court Authority

29. While perhaps not as many district courts have granted habeas in this issue as in the now familiar 1225 vs. 1226 issue, due to procedural issues, this is also a case where every other district court to consider the issue has found that the automatic stay provision violates due process or is an illegal ultra vires regulation

30. Habeas cases ebb and flow as DHS attempts to reintroduce the stay, but all with the same results of granted habeas petition. "In the early 2000s, several federal courts concluded the automatic stay provision violated the due process rights of detainees." Herrera v. Knight, 2025 WL 2581792, at *3 (D. Nev. 2025) (citing Zavala v. Ridge, 310 F. Supp. 2d 1071 (N.D. Cal. 2004); Bezmen v. Ashcroft, 245 F. Supp. 2d 446 (D. Conn. 2003); Zabadi v. Chertoff, No. 05-CV-1796 (WHA), 2005 WL1514122 (N.D. Cal. June 17, 2005); Uritsky v. Ridge, 286 F. Supp. 2d 842 (E.D. Mich. 2003).

31. Since the Defendant's change on position on whether aliens who entered without inspection are subject to mandatory detention, cases involving the automatic stay have again begun to proliferate, resulting in many other grants of habeas with no denials. See, e.g., Herrera v. Knight, 2025

WL 2581792, at *3 (D. Nev. 2025); Palma v. Trump, 2025 WL 2624385, at *1 (D. Neb. 2025); Maldonado Vazquez v. Feeley, 2025 WL 2676082, at *17 (D. Nev. 2025); Arce v. Trump, 2025 WL 2675934, at *4 (D. Neb. 2025); Beltran Barrera v. Tindall, 2025 WL 2690565, at *7 (W.D. Ky. 2025); Hasan v. Crawford, 2025 WL 2682255, at *13 (E.D. Va. 2025); Singh v. Lewis, 2025 WL 2699219, at *2 (W.D. Ky. 2025); Sampiao v. Hyde, 2025 WL 2607924, at *12 (D. Mass. 2025); Campos Leon v. Forestal, 2025 WL 2694763, at *5 (S.D. Ind. 2025): Lopez-Arevelo v. Ripa, 2025 WL 2691828, at *1 (W.D. Tex. 2025): Leal-Hernandez v. Noem, 2025 WL 2430025, at *4 (D. Md. 2025).

32. Because Respondents have adopted this policy contrary to law, Plaintiff is likely to succeed on the merits of his habeas petition, for violations of the Administrative Procedure Act (including a policy contrary to law, arbitrary and capricious agency policy, and failure to observe required procedures), for the ultra vires petition, and for violation of the Fifth Amendment Due Process Clause

### III. IRREPARABLE HARM

33. Absent the requested relief, Plaintiff will suffer irreparable harm. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981).

34. Plaintiff remains in custody at the Hardin County Jail in a situation comparable to pretrial detention, jail, or prison.

35. The loss of liberty for even a minimal period of time is a significant irreparable harm that cannot be compensated for with other remedies. A "loss of liberty" is "perhaps the best example of irreparable harm." Matacua v. Frank, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018); see Hamama v. Adducci, 349 F. Supp. 3d 665, 701 (E.D. Mich. 2018), rev'd on other grounds, 946 F.3d 875 (6th Cir. 2020) (finding "detention has inflicted grave" and "irreparable harm" and describing the impact of prolonged detention on individuals and their families). Notwithstanding the physical loss of freedom, the loss of solely First Amendment freedoms "for even minimal periods of time, unquestionably

7

constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality); see ACLU of Ky. v. McCreary Cty., 354 F.3d 438, 445 (6th Cir. 2003) ("[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."); United States v. Bogle, 855 F.2d 707, 710–11 (11th Cir. 1988) ("[U]nnecessary deprivation of liberty clearly constitutes irreparable harm.").

## IV. BALANCE OF EQUITIES

36. The court asks "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Nebraska v. Biden, 52 F.4th 1044, 1046 (8th Cir. 2022) (per curiam). "If the balance tips decidedly towards the plaintiffs and the plaintiffs have raised questions serious enough to require litigation, ordinarily the injunction should issue." Id. (quoting Fennell v. Butler, 570 F.2d 263, 264 (8th Cir. 1978)).

37. The court examines the irreversible impact of the Respondents' actions compared to the lack of harm an injunction would cause the Respondents. See id. (comparing a different government policy in terms of irreversible impact to Plaintiff and lack of harm of an injunction).

38. The hardship for Plaintiff is concrete, severe, and as noted supra, irreversible. Every minute Plaintiff spends in custody is a minute he can never get back in his life.

39. The impact of an injunction on the Respondents is comparably minimal. First, the Respondents cannot be harmed by a constitutionally mandated injunction. As Plaintiff's continued detention violates the Due Process Clause and the Suspension Clause, the government cannot be harmed by a constitutionally mandated injunction. See Zepeda v. INS, 753. F.2d 719, 727 (9th Cir. 1983) (the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.").

40. The harsh impact of detention on Plaintiff, compared to the pausing of a novel new ICE policy, results in a balance that tips heavily in favor of Plaintiff.

8

## V. PUBLIC INTEREST

41. Permitting continued violations of federal law would serve "neither equity nor the public's interest." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022). Thus, the public interest weighs in favor of Petitioners because continued detention without the legal protections afforded under 8 U.S.C. § 1226(a) arbitrarily violates Petitioners' due process rights. See Xuyue Zhang v. Barr, 612 F.Supp.3d 1005, 1017 (C.D. Cal. 2020) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

## VI. PRUDENTIAL EXHAUSTION

42. There is no statutory requirement of exhaustion to Plaintiff's challenge to the lawfulness of his detention. See, e.g., Araujo-Cortes v. Shanahan, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014) ("There is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention.").

43. Even if Plaintiff needed to exhaust, Plaintiff has exhausted all effective administrative remedies available to him. Prudential exhaustion is not required when to do so would be futile or "the administrative body . . . has . . . predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140, 148 (1992), superseded by statute on other grounds as stated in Woodford v. Ngo, 548 U.S. 81 (2006).

44. This is where it is important to note than even though he is not being held under it, the BIA has adopted the indefensible position that all aliens who entered without inspection are subject to mandatory detention under Hurtado.

45. The next reasonable remedy would be to appeal to the Board of Immigration Appeals (BIA), which would be fruitless, as the BIA has already decided published cases showing the BIA agrees with ICE's novel interpretation. Matter of Hurtado, 29 I&N Dec. 216 (BIA 2025).

46. When the BIA does not respond to the errors of ICE and EOIR, prudential

exhaustion is not required. See, e.g., Jarpa v. Mumford, 211 F. Supp. 3d 706, 712 (D. Md. 2016) ("In light of the Government's consistent position upholding categorical detention without any meaningful individualized bail review, exhaustion here would be futile."); Sengkeo v. Horgan, 670 F. Supp. 2d 116, 121-23 (D. Mass. 2009) (collecting cases and concluding that "the BIA has clearly and repeatedly upheld the denial of a bond hearing under the view that § 1226(c) mandates detention without bond").

47. In addition, prudential exhaustion is not required where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." McCarthy, 503 U.S. at 147. Every day that Plaintiff is unlawfully detained causes him and his family irreparable harm. See Jarpa, 211 F. Supp. 3d at 711 ("Here, continued loss of liberty without any individualized bail determination constitutes the kind of irreparable harm which forgives exhaustion.").

48. Prudential exhaustion is additionally not required in cases where the agency "lacks the institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute." McCarthy, 503 U.S. at 147-48. Immigration agencies have no jurisdiction over constitutional challenges of the kind Plaintiff raises here. See, e.g., Matter of C-, 20 I.&N. Dec. 529, 532 (BIA 1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations."); Matter of Akram, 25 I.&N. Dec. 874, 880 (BIA 2012); Matter of Valdovinos, 18 I.&N. Dec. 343, 345 (BIA 1982). Further, they have no competence to resolve the issue here, as they are already getting the issue wrong. See Dkt. 1 - Exhibit E.

49. It is not just that the BIA cannot fix this issue: the BIA and the DOJ do not want to fix the issue. Any appeal to the BIA is futile. DHS's new policy was issued "in coordination with" DOJ. EOIR—the immigration court system—is a component agency of DOJ. In other ongoing litigation with EOIR and the Attorney General, DOJ has affirmed its position that individuals like Plaintiff are subject to detention under 8 U.S.C. § 1225(b)(2)(A). See, e.g., Mot. to Dismiss, Rodriguez Vazquez v. Bostock, No. 3:25-CV-05240-TMC (W.D. Wash. June 6, 2025), Dkt. 49; Opposition,

Lazaro Maldonado Bautista et. al. v. Ernesto Santacruz Jr et. al., No. 5:25-cv-01873-SSS-BFM (C.D. Cal. August 8, 2025), Dkt. 40.

50. Because requiring Plaintiff to exhaust administrative remedies would be futile and cause him irreparable harm, and the immigration agencies lack competence and jurisdiction over Plaintiff's constitutional claims, this Court should not require exhaustion as a prudential matter.

**WHEREFORE**, Petitioner moves the court to enter a preliminary injunction and temporary restraining order, providing:

1. An order that Defendants release Plaintiff.

2. An order enjoining the BIA from ordering that Plaintiff is subject to mandatory detention under 8 U.S.C. § 1225.

3. Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), 5 U.S.C. § 504, and on any other basis justified under law.

until a decision can be reached in this matter.

**PARRISH KRUIDENIER LLP**

BY: */s/ Alexander Smith*
    Alexander Smith    AT0011363
    2910 Grand Avenue
    Des Moines, Iowa 50312
    (515) 284-5737
    (515) 284-1704 (Fax)
    asmith@parrishlaw.com
**ATTORNEY FOR PLAINTIFF**

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was **electronically filed** using the CM/ECF system of September 24, 2025. I hereby certify that a copy of this document will be served on the parties or attorneys of record by summons.

                                          /s/ Dianna Solano